**ANDREWS, Appellant,**

**v.**

**CARMODY; Conway et al., Appellees.**

[Cite as *Andrews v. Carmody* (2001), 145 Ohio App.3d 27.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2000-L-131.

Decided July 11, 2001.

28

*Geoffrey W. Weaver* and *John W. Wiles,* for appellant.

*James M. Gillette,* for appellees.

GRENDELL, Judge.

This is an accelerated calendar appeal. Charles M. Andrews ("appellant") appeals a judgment entry by the Lake County Court of Common Pleas granting a joint motion for summary judgment in favor of defendants, Neil J. Conway ("Conway") and Conway Land Title Company ("Conway Co.").

In October 1998, appellant became aware of the sale of commercial property located at 137 Richmond Street, Painesville, Ohio, which was owned by Jane Carmody ("Carmody"). In late October 1998, appellant and Carmody signed a purchase agreement, designating Conway Co. as the escrow agent.

In addition to being an employee, sole shareholder, and president of Conway Co., Conway was also an attorney licensed to practice law in Ohio. Subsequent to the signing of the purchase agreement, Conway advised Carmody that the agreement was not favorable to her and that it was potentially voidable. As a

result, Carmody did not complete the sale transaction. The parties are in dispute as to *when* Conway was retained to represent Carmody as her attorney.

Thereafter, on January 29, 1999, appellant filed a complaint, naming Carmody and Conway as defendants. Appellant sought specific performance from Carmody and alleged that, as the designated escrow officer, Conway tortiously interfered with the contract to purchase the real property at issue. On June 9, 1999, appellant filed an amended complaint, adding Conway Co. as a new defendant. Appellant again sought specific performance from Carmody; however, appellant now alleged that both Conway and Conway Co. tortiously interfered with the purchase agreement.

On July 19, 1999, Conway and Conway Co. filed a joint motion for summary judgment, pertaining to the tortious interference claim. They contended that they did not have an interest in the property and that Conway was retained as Carmody's attorney in April 1998. Along with their memorandum in support and other documents, the affidavits of Conway, Carmody, Attorney Charles N. Higgins, Jr., and David J. Novakovich were attached to their motion. All four affidavits asserted that, during the negotiations with appellant as to the purchase of the real property at issue, Conway represented Carmody as her attorney.[1]

In response, on August 17, 1999, appellant filed a memorandum in opposition, attaching his affidavit along with other documents. Appellant asserted that there were too many unresolved issues because, at the onset of the negotiations with Carmody, Attorney Higgins represented Carmody and Conway held himself out as the escrow agent. Appellant contended that, on December 1, 1998, for the first time, Conway informed him that he was acting as Carmody's attorney. Appellant further argued that, before December 1, 1998, all correspondences from Conway to him were on the letterhead of Conway Co. In his affidavit, appellant stated that it was agreed that Conway would be the escrow agent; however, on December 1, 1998, after Conway refused to close the transaction,

---

1. The affidavit of David J. Novakovich, Carmody's accountant, stated that, in April 1998, Carmody gave him permission to contact Conway so that he could represent her in the sale of the real property at issue to Seppo Rantala. Novakovich also stated that Conway drafted the purchase agreement; however, Rantala did not sign it, but Conway continued to represent Carmody while the negotiations with appellant were pending.

The affidavit of Carmody stated that in April 1998, Seppo Rantala expressed an interest in buying the property; therefore, she discussed the offer with David Novakovich. She also stated that she gave him permission to contact Conway to ask if he could represent her in the sale to Rantala. Novakovich informed her that Conway would prepare the sales agreement. As to the transaction with appellant, Carmody stated that Conway was her attorney. (The sales agreement between Carmody and Rantala was attached to Carmody's affidavit.)

The affidavit of Attorney Charles N. Higgins, Jr. stated that he represented Carmody in legal matters, relating to estate planning and probate/estate tax law; however, as to the sale of the property to appellant, Conway was her attorney for the real estate law aspect of the sale.

Conway for the first time informed him that he was acting as counsel for Carmody.

A "non-oral, non-appearing" hearing was held on August 17, 1999. In a judgment entry filed September 24, 1999, the trial court granted the joint motion for summary judgment by Conway and Conway Co. The court stated that, in real estate transactions, an individual may act as an attorney for one of the parties and as an escrow agent for both parties. The court added that, in such a situation, the individual must uphold his obligations to his client in his capacity as an attorney and to both parties in his capacity as the escrow agent. Next, the court indicated that neither Conway nor Conway Co. had an interest in the property at issue, and all advice given to Carmody was in Conway's capacity as her attorney; therefore, the legal advice from Conway to Carmody was justified because it was given in his capacity as her attorney. On October 22, 1999, appellant filed a notice of appeal; however, on May 15, 2000, this court dismissed the appeal for lack of a final appealable order. On August 2, 2000, appellant voluntarily dismissed Carmody as a defendant, making the trial court's judgment entry a final appealable order. Appellant filed a timely notice of appeal on August 10, 2000. Appellant asserts the following assignment of error:

"The trial court erred to the prejudice of appellant by granting summary judgment in favor of appellees."

In appellant's sole assignment of error, appellant contends that there are genuine issues of material fact, and reasonable minds could come to different conclusions as to whether Conway acted with justification in procuring the breach of contract and whether Conway acted as an attorney for Carmody prior to December 1, 1998. Appellant argues that the trial court should have overruled the motion for summary judgment based upon the inconsistencies between his affidavit and the affidavits in favor of Conway and Conway Co. Finally, appellant avers that the trial court's judgment entry failed to address the seven factors set forth in *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, to determine whether or not interference with a contract is justified.

On appeal, a court of review must conduct a *de novo* review of the grant or denial of summary judgment. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. A *de novo* review requires an independent review of the trial court's decision without any deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615.

Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewing that evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 512, 651 N.E.2d 937, 939–940.

Once a moving party meets his burden of supporting his motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that a nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings; rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists for trial. Civ.R. 56(E); *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639, 641–642. A "genuine issue" exists when a reasonable jury could return a verdict for the nonmoving party based upon the evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. If the nonmoving party fails to set forth specific facts, demonstrating the existence of a genuine issue, then summary judgment, if appropriate, will be granted against the nonmoving party. Civ.R. 56(E). The principal purpose behind Civ.R. 56(E) is to allow a court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 300, 725 N.E.2d 646, 652–653.

In the case *sub judice*, before making an independent determination as to whether the trial court properly granted the motion for summary judgment, we must first address the underlying issues that are raised by appellant.

The Supreme Court of Ohio formally recognized the existence of tortious interference with a contract in *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863. To recover under this tort, a plaintiff must prove all of the following elements: (1) the existence of a contract, (2) the defendant's knowledge that a contract existed, (3) the defendant's intentional procurement to breach that contract, (4) the defendant's lack of justification for the procurement to breach the contract, and (5) the damages that resulted from the breach. *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of the syllabus (reaffirming the elements for tortious interference with a contract in *Kenty, supra,* at paragraph two of the syllabus).

The fourth element, lack of justification in procuring the breach, requires a plaintiff to present proof that the defendant's interference with the

contract was improper. *Fred Siegel* at paragraph two of the syllabus (citing *Kenty, supra*). If a defendant's interference with a contract is justified, then such interference is not actionable. Rather, only improper interference is actionable. *Fred Siegel* at 176, 707 N.E.2d at 858. Specifically, the Supreme Court of Ohio has held that a defendant's interference with a contract is not actionable when the defendant is vested with a privilege. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294.

This court and other Ohio appellate courts have held that a qualified privilege may be asserted in tortious interference cases. *Doyle v. Fairfield Machine. Co., Inc.* (1997), 120 Ohio App.3d 192, 218, 697 N.E.2d 667, 683–684; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 148, 23 OBR 387, 389–390, 492 N.E.2d 852, 855–856; *Donald G. Culp Co. v. Reliable Stores Corp.* (1983), 14 Ohio App.3d 161, 163, 14 OBR 178, 180–181, 470 N.E.2d 193, 196–197; *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235. This court again reemphasized the fact that, in tortious interference cases, Ohio law places the burden of proving a lack of privilege or a lack of justification upon the plaintiff. *Doyle, supra,* at 217, 697 N.E.2d at 683 (citing *Kenty, supra*). In overcoming a defendant's assertion that a qualified privilege exists, the plaintiff must demonstrate the existence of malice on the part of the defendant through clear and convincing evidence. *Doyle* at 218, 697 N.E.2d at 683–684 (citing *A & B–Abell Elevator, supra,* at 11–12, 651 N.E.2d at 1292–1293). Malice, in the context of a qualified privilege, does not require the showing of ill-will or hatred for the plaintiff; rather, "malice" is defined as acting with knowledge that the statements that were made were false or acting with disregard as to the truthfulness or falseness of the statements. *Id.*

Moreover, in determining whether the defendant's interference is improper, in *Fred Siegel, supra,* the Supreme Court of Ohio held that the following factors should be considered: the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff, the interests sought to be advanced by the defendant, the social interests in protecting the defendant's freedom to act, the contractual interests of the plaintiff, the proximity or remoteness of the defendant's conduct to the interference, and the relationship between the parties. *Fred Siegel* at paragraph three of the syllabus.

In the case before us, upon thoroughly reviewing the record, the first three elements for tortious interference with a contract are undeniably demonstrated. As to the first element, the existence of a contract, it is uncontested that a purchase agreement for the property at issue was entered into by appellant and Carmody in late October 1998. Next, the March 3, 1999 joint answer of Conway and Conway Co. acknowledges that Conway communicated with Carmody, advis-

ing her that the terms of the purchase agreement were not favorable to her and that she should not proceed with the sale. Accordingly, the second and third elements, knowledge that a contract existed and the intentional procurement to breach that contract, are also irrefutably demonstrated through the record.

Before addressing the fourth element for tortious interference in relation to the facts and circumstances of the instant case, it is necessary for us to point out that the March 3, 1999 and July 8, 1999 answers by Conway and Conway Co. acknowledge that Conway was designated the escrow agent for both parties. This court has held that, in real estate sales transactions, an attorney may act as the attorney for one of the parties and the escrow agent for both parties. *Ravenna v. Fouts* (Feb. 4, 1994), Portage App. No. 92–P–0098, unreported, 1994 WL 88980, at 13 (citing *Saad v. Rodriguez* [1986], 30 Ohio App.3d 156, 30 OBR 275, 506 N.E.2d 1230, syllabus).

Pursuant to Civ.R. 56(C), after careful review of the joint summary judgment motion by Conway and Conway Co., including the attached exhibits and affidavits, we conclude that their motion was supported with sufficient and acceptable evidence, demonstrating the absence of a genuine issue of material fact as to the fourth element for appellant's tortious interference claim. Specifically, the affidavits of David Novakovich, Attorney Higgins, Carmody, and Conway demonstrated that Conway's interference with the purchase agreement was justified because Conway was representing Carmody as her attorney. Therefore, pursuant to Civ.R. 56(E), appellant has the reciprocal burden of setting forth specific facts, showing that a genuine issue exists for trial.

The fourth element, lack of justification in procuring the breach, requires proof that Conway's interference with the purchase agreement between Carmody and appellant was improper. Since Conway and Conway Co. asserted the existence of a privilege as to Conway's interference with the purchase agreement, malice on the part of Conway and Conway Co. must be demonstrated in order to overcome the contention of a privilege. A showing of malice requires clear and convincing evidence that Conway and Conway Co. interfered with the purchase agreement knowing that the statements that Conway made to Carmody were false or that Conway acted with disregard to the truthfulness or falseness of his statements to Carmody as to the purchase agreement.

Construing the evidence that was before the trial court in a light most favorable to appellant and thoroughly reviewing appellant's memorandum in opposition, appellant's affidavit, and the attached exhibits, we find that there does not exist any evidence of malice, let alone clear and convincing evidence of malice, to overcome the privilege asserted by Conway and Conway Co. Additionally, in applying the factors set forth by the Supreme Court of Ohio in *Fred Siegel*, to determine whether the interference by Conway and Conway Co. was improper,

we conclude that such interference was not actionable. For instance, there is no indication that Conway or Conway Co. had a financial interest in the property at issue, the interests sought to be advanced by Conway's interference were only Carmody's interests, and the social interests involved concern an attorney's freedom to communicate with his client without liability.

Pursuant to Civ.R. 56(E), appellant failed to adequately meet his reciprocal burden of setting forth specific facts, demonstrating the existence of a genuine issue for trial as to the fourth element for his claim of tortious interference with the purchase agreement. As stated in the trial court's judgment entry, appellant merely submitted his own affidavit. The failure to demonstrate one out of the five elements bars recovery for tortious interference with a contract.

Accordingly, reasonable minds can come to but one conclusion, which is that Conway's interference with the purchase agreement was justified and privileged because he was acting in the capacity of Carmody's attorney. Conway and Conway Co. are entitled to summary judgment as a matter of law. The trial court correctly granted the motion for summary judgment. For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

WILLIAM M. O'NEILL, P.J., and NADER, J., concur.