OPINION
Appellant, Thomas L. Meros, appeals from a final judgment of the Trumbull County Court of Common Pleas granting appellees, Frank G. Mazgaj ("Mazgaj"), Timothy C. Campbell ("Campbell"), David J. Hanna ("Hanna"), Donald A. Powell ("Powell"), Hanna, Campbell, Powell, L.L.P. ("Hanna, Campbell, Powell"), Denman Tire Corporation ("Denman Tire"), Raymond Tisone ("Tisone"), and David and Susan Sinea ("the Sineas"), summary judgment. For the following reasons, we affirm the judgment of the trial court.
The record shows that in 1995, the Sineas retained appellant to represent them in a lawsuit against Mr. Sinea's former employer, Denman Tire. Eventually, the Sineas received a jury verdict in their favor for $125,000 that was appealed by both parties. After the briefs were filed, but before the appeal could be decided, appellant was suspended from the practice of law for eighteen months. Disciplinary Counsel v. Meros
(1998), 83 Ohio St.3d 222. As a result, the Sineas subsequently retained Tisone to replace appellant as counsel of record.
On appeal, this court not only affirmed the $125,000 judgment for compensatory damages, but we also remanded the case back to the trial court, concluding that the jury should have been instructed on punitive damages. Sinea v. Denman Tire Corp. (1999), 135 Ohio App.3d 44. Denman Tire appealed our decision to the Supreme Court of Ohio, who declined to exercise jurisdiction over the case. Sinea v. Denman Tire Corp. (2000),88 Ohio St.3d 1415.
After all appeals were exhausted, Denman Tire issued a check made payable to "David Sinea, Susan Sinea and Ray Tisone, Attorney" in the amount of $155,787.68 to satisfy the judgment and accrued interest. Tisone received the check and, pursuant to the Sinea's prior agreement with appellant, retained 40 percent of the judgment as attorney fees. Of this 40 percent, Tisone gave appellant $41,543.38 as payment for his services, and kept the remainder for himself.[1]
Unsatisfied with this arrangement, appellant filed a complaint in the Trumbull County Court of Common Pleas naming Mazgaj, Campbell, Hanna, Powell, Hanna, Campbell, Powell, Denman Tire, Tisone, and the Sineas as defendants.[2] According to the complaint, appellees had conspired to deprive appellant of fees earned in both the Sinea lawsuit and an unrelated case. Based on these allegations, appellant submitted the following nine claims for relief: (1) conversion; (2) loss of profits and business; (3) fraud; (4) intentional interference with a contractual relationship; (5) intentional interference with a business relationship; (6) tortious interference with contract; (7) intentional infliction of emotional distress; (8) retaliation; and (9) violations of both the federal and state Racketeer Influenced and Corrupt Organizations acts ("RICO").
Appellant subsequently filed two motions for summary judgment with the trial court. Appellees responded by filing briefs in opposition and their own motions for summary judgment. The trial court considered the parties' arguments, and in a judgment entry dated August 29, 2001, denied appellant's motions for summary judgment on his conversion and tortious interference with contract claims, while at the same time granting appellees' motions for summary judgment on those same issues. With respect to appellant's remaining claims, the trial court concluded that because they were based on a common predicate, conversion and/or tortious interference with contract, appellees were entitled to summary judgment as a matter of law on those as well.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:
 "[1.] The trial court erred in denying appellant's motion for summary judgment and granting summary judgment to appellees on the issue of liability relating to conversion and interference with contract.
 "[2.] The trial court erred inn granting summary judgment in favor of appellees on appellant's Ohio civil RICO claim and erred in not permitting appellant to amend the complaint to include the Federal RICO claim and to add new-party defendants as co-conspirators[.]
 "[3.] The trial court erred in not granting appellant's motion to amend the complaint to state a claim against Tisone for intentional spoliation of evidence, i.e. the original and a copy of the subject contract."
Under his first assignment of error, appellant essentially argues that the trial court erred in granting appellees' motions for summary judgment on his conversion and tortious interference with contract claims. In doing so, he maintains that there were genuine issues of material fact that precluded summary judgment on those issues.
At the outset, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc. (1993),67 Ohio St.3d 266, 268.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Dresher at 293.
If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. Id.
Generally speaking, conversion is "any exercise of dominion or control wrongfully exerted over personal property of another in denial of or under a claim inconsistent with his rights." Okocha v. Fehrenbacher
(1995), 101 Ohio App.3d 309, 318. A person seeking damages for conversion must be able to show that he had an ownership interest in or a right to possession of the property at the time of the conversion. Minix v.Collier (Aug. 4, 2000), Scioto App. No. 99CA2690, unreported, 2000 Ohio App. LEXIS 3662, at 9-10.
Accordingly, to be successful on his conversion claim, appellant had to show he had an ownership interest in or a right to possession of the specific check issued by Denman Tire, and that appellees wrongfully interfered with that interest or right. After looking at the undisputed evidence, we conclude that appellant, as a matter of law, had no ownership interest in or right to possession of the check in question. Instead, once the Supreme Court of Ohio suspended appellant from the practice of law and he was no longer able to represent the Sineas in their lawsuit, appellant was only entitled to an equitable interest in the final judgment to compensate him for the work previously completed on the case.
To satisfy his equitable interest, appellant should have brought an action for quantum meruit, which appellant failed to do. In Reid,Johnson, Downes, Andrachik Webster v. Lansberry (1994),68 Ohio St.3d 570, paragraph two of the syllabus, the Supreme Court held that "[w]hen an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency." (Emphasis sic.) See, also, Fox Assoc. Co. L.P.A. v. Purdon (1989), 44 Ohio St.3d 69, syllabus.[3]
Underlying this decision was the reasoning that "[o]nce discharged, the attorney must withdraw from the case, and can no longer recover on the contingent-fee-representation agreement." Lansberry at 574.
Although appellant was suspended from the practice of law rather than discharged by his client, the same logic is applicable. That is, once the attorney/client relationship dissolved, the parties' contingent-fee agreement was terminated by operation of law and quantum meruit was the only way appellant could receive payment for his work.
Appellant, however, argues that because he successfully obtained a verdict for the Sineas in the trial court, he is entitled to 40 percent of the judgment in accordance with their contingency-fee agreement. We disagree. The fact that a jury had already awarded the Sineas damages is immaterial because all parties concede that appellant agreed to represent the couple until the case was resolved, including any subsequent appeals.[4] The appeal could have concluded in a complete reversal, resulting in appellant being entitled to nothing, even if he had been able to continue representing the Sineas. Moreover, by engaging in conduct that resulted in his disbarment, appellant effectively forced the Sineas to retain a new attorney to represent them on appeal. As a result, the trial court properly granted appellees summary judgment on appellant's conversion claim.
Next appellant argues that the trial court erred when it granted Tisone, Mazgaj, Campbell, Hanna, Powell, and Hanna, Campbell, Powell summary judgment on his cause of action for tortious interference with contract.
To recover under the theory that a party tortuously interfered with a contract, evidence of the following must be provided: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." Fred Siegel Co., L.P.A. v.Arter Haden (1999), 85 Ohio St.3d 171, paragraph one of syllabus. See, also, Andrews v. Carmody (2001), 145 Ohio App.3d 27, 32.
Here, although appellant and the Sineas entered into some form of a contingent-fee agreement, that agreement was terminated when appellant was suspended from the practice of law and could not continue representing the couple. Accordingly, because the contract had already concluded when Denman Tire paid the judgment, summary judgment was proper, as there was no contract to interfere with. Ross v. Woyan (1980),1 Ohio App.3d 39, 41 (holding that "[o]nce that [attorney/client] relationship is terminated, a third party cannot be guilty of interfering with contractual relations, although the former clients may be liable to their former attorney * * * for payment for services rendered to that point.").
Again, if appellant believed that the money he received did not adequately compensate him for his work, he had to file an action in quantum meruit. Having failed to do this, appellant cannot now recover the disputed fees from the Sineas, or any one of the other appellees for that matter.
Also, although not clear from the briefing, it appears that appellant claims he and Tisone entered into some sort of agreement whereby appellant, despite being suspended from the practice of law, would continue to work on the case. After looking at the record, this court can find no evidence of any such agreement. Appellant's first assignment of error is not well-taken.
In assignment of error two, appellant argues that the trial court erred in granting appellees summary judgment on his RICO claims. Specifically, appellant maintains that appellees knowingly engaged in a conspiracy to defraud him of money by mailing the check without including his name on it, and that this violated Ohio's RICO statute. Appellant also submits that the trial court abused its discretion when it prevented him from amending his complaint to include additional federal RICO claims and to add new defendants as co-conspirators. We disagree.
As we noted earlier, appellant had no ownership interest in or a right to possession of the check Denman Tire issued. Moreover, Tisone, Mazgaj, Campbell, Hanna, Powell, and Hanna, Campbell, Powell were not required to protect appellant's fee. Ross, supra. Instead, if appellant disagreed with the amount he received for his work, the proper course of action would be to seek redress against the Sineas, his former clients.
A similar argument was rejected by the Eighth Appellate District in the second case that appellant relies upon to establish a pattern of corrupt activity. In Meros v. Rorapaugh (Nov. 22, 2000), Cuyahoga App. No. 77611, unreported, 2000 WL 1739297, appellant sued several individuals to collect a contested contingency fee. The defendants filed a motion to dismiss the case which the trial court granted. Appellant did not appeal this decision; rather, he filed a motion for relief from judgment pursuant to Civ.R. 60(B). The trial court denied this motion, and appellant appealed.
On appeal, the Eighth Appellate District determined that appellant was essentially claiming that because he was owed legal fees the defendants had a duty to include him on the check satisfying the judgment and should not have released the judgment proceeds directly to his former clients. The court concluded that even though appellant had an equitable lien on the proceeds and could file an action to enforce the lien, his cause of action was against his former clients, not against the parties releasing the funds. Meros at 6-7.
Turning back to the case at bar, appellant did not have any interest in or right to the check issued to the Sineas and Tisone. Accordingly, appellees were not required to include his name on the check. In other words, there is absolutely no evidence that appellees were involved in a pattern of corrupt activity that would establish a RICO violation.
We reach a similar result with respect to appellant's argument that the trial court abused its discretion in preventing him from amending his complaint. Civ.R. 15(A) states that parties may amend their complaint after a responsive pleading has been served only by leave of court or written consent of the other party. "Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." (Emphasis sic.) Wilmington Steel Products, Inc. v. ClevelandElec. Illuminating Co. (1991), 60 Ohio St.3d 120, syllabus.
Based on the undisputed facts, this court concludes that appellant failed to make the required prima facie showing that would allow him to amend his complaint. Simply stated, appellant provided nothing in his motion to amend that indicated anyone was somehow involved in a pattern of corrupt activity. As we have noted on numerous times throughout this opinion, this case is essentially a fee dispute between appellant and the Sineas. Thus, the trial court did not abuse its discretion in denying appellant's motion to amend. Appellant's second assignment of error has no merit.
In his third and final assignment of error, appellant maintains that the trial court also abused its discretion when it would not allow him to amend his complaint to include a cause of action against Tisone for intentional spoliation of evidence. To support his position, appellant claims that after he gave Tisone the Sineas' case file, Tisone destroyed the original contingent-fee agreement between him and the Sineas, and that the agreement's destruction somehow disrupted his case.
To establish a claim for spoliation of evidence, appellant would have been required to prove the following:
 "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." Smith v. Howard Johnson Co., Inc. (1993), 67 Ohio St.3d 28, 29. See, also, Drawl v. Cornicelli (1997), 124 Ohio App.3d 562, 566.
Not only has appellant failed to provide evidence that Tisone had the contingency-fee agreement in his possession at some point in time, but he also failed to provide evidence that any alleged destruction was designed to disrupt his case. In fact, by the time Tisone began representing the Sineas, the contingency-fee agreement between the couple and appellant was no longer enforceable. Put another way, appellant could not sue anyone under the agreement because his only recourse was an action for quantum meruit that would be based on the reasonable value of his services up to the time he was suspended from the practice of law.Lansberry, supra. As a result, appellant failed to make the required prima facie showing that would allow him to amend his complaint. Appellant's third assignment of error is meritless.
Based on the foregoing analysis, appellant's three assignments of error are not well-taken. The judgment of the trial court, therefore, is affirmed.
NADER, J., GRENDELL, J., concur.
[1] On December 22, 1999, the Board of Commissioners on Grievances and Discipline filed a report in which it recommended that appellant be permanently disbarred. Accordingly, when appellant filed his application for reinstatement following the completion of his eighteen-month suspension, the Supreme Court denied his request. Ultimately, the Supreme Court issued a decision on July 12, 2000, adopting the findings of the board and permanently disbarring appellant from the practice of law in Ohio. Cuyahoga Cty. Bar Assn. v. Meros (2000), 89 Ohio St.3d 304.
[2] Mazgaj, Campbell, Hanna, and Powell were partners with the law firm of Buckingham, Doolittle Burroughs, L.L.P., and represented Denman Tire in the Sinea lawsuit. During the litigation, the four attorneys left their former law firm and became partners with Hanna, Campbell, 
Powell.
[3] Lansberry, the law firm seeking to recover fees was discharged before filing a complaint, while in Fox, the law firm was discharged after a complaint was filed but before the case was settled.
[4] We note that R.C. 4705.15(B) requires every contingency-fee agreement entered into "in connections with a claim that is or may become the basis of a tort action * * * shall be reduced to writing and signed by the attorney and the client." Appellant, however, never produced a written contingency-fee agreement in this case; rather, he claimed that he sent the only copy to Tisone.