OPINION
{¶ 1} Plaintiff-appellant, Knox Machinery, Inc. ("Knox"), appeals the decision of the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, Doosan Machinery, U.S.A., Inc. ("Doosan"), and Advanced Machinery Concepts, Inc. ("Advanced"). We affirm the trial court's decision.
 {¶ 2} Knox is a distributor of the Hwacheon line of machine tools. Knox was negotiating the sale of a Hwacheon machine tool to a potential buyer, McKee-Addison Tube Forming Inc. ("McKee"). However, Knox soon realized that the Hwacheon machine tools would not fit McKee's needs. Gregory Knox, president of Knox, believed that a Doosan machine tool would fit McKee's needs. In late January or early February of 2000, Gregory Knox contacted Doosan and inquired about Knox's ability to sell a Doosan brand machine tool to McKee even though Knox is not a Doosan distributor.
 {¶ 3} According to Gregory Knox, he obtained an oral promise from Al Stroup, president of Doosan, that Doosan would sell the machine tool to Knox and to no one else, for eventual resale to McKee. Gregory Knox alleged this promise was made in exchange for identifying the potential buyer, McKee, to Doosan. After allegedly gaining the promise of protection, Knox met with McKee to finalize the sale. However, McKee did not receive authorization from its corporate headquarters to fund the purchase.
 {¶ 4} On April 12, 2000, Doosan entered into an exclusive distributing agreement with Advanced. Advanced informed McKee that Advanced was now the exclusive distributor of Doosan machines. Advanced had a long standing relationship with McKee as Advanced had done all of McKee's rigging and moving of machinery for several years. Advanced inquired whether McKee was interested in acquiring any Doosan machine tools. McKee stated it was interested in a particular Doosan machine tool. However, when McKee received Advanced's inquiry, McKee phoned Doosan headquarters to ask whether McKee should transact business with Knox or Advanced. Doosan answered by informing McKee that since April 12, 2000, Advanced was Doosan's exclusive distributor. Advanced received a purchase order from McKee for the machine tool. Advanced purchased the machine tool from Doosan and sold it to McKee.
 {¶ 5} Knox filed suit soon thereafter, asserting Doosan breached its oral contract to protect, tortiously interfered with a business relationship, and committed fraud. Knox's claim also named Advanced, but Knox later voluntarily dismissed its claims against Advanced. Doosan moved for and was granted summary judgment on all three claims. Knox appeals raising a single assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED WHEN IT GRANTED DOOSAN'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT AND REASONABLE MINDS COULD NOT COME TO BUT ONE CONCLUSION AS TO KNOX'S CLAIMS MADE AGAINST DOOSAN IN PROCURING A SALE TO MCKEE-ADDISON."
 {¶ 7} An appellate court reviews a decision granting summary judgment on a de novo basis. See Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56(A) and (B), either party to a lawsuit can make a motion for summary judgment. Summary judgment is properly granted when: 1) there is no genuine issue as to any material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976),54 Ohio St.2d 64, 66.
 {¶ 8} Knox argues a genuine issue of fact exists as to the breach of an oral contract between it and Doosan. Knox argues that Al Stroup, on behalf of Doosan, promised to protect Knox as it developed the sale of a Doosan machine tool to McKee. Doosan argues that the statute of frauds defeats the claim for breach of contract because there was no writing to evidence the agreement. Knox argues that a writing is not necessary because the oral contract did not bargain for the machine tool. Knox also argues the subject matter of the oral contract was protection by Doosan and not the machine tool itself. Knox claims the promise of protection was made in exchange for the name of the potential buyer of the machine tool.
 {¶ 9} Ohio's statute of frauds is codified in R.C. 1302.04. R.C.1302.04(A) provides that "a contract for the sale of goods with a price exceeding five hundred dollars is not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought * * *." A good is defined as "all things which are moveable at the time of identification to the contract for sale * * *." R.C.1302.01(A)(8).
 {¶ 10} Gregory Knox was asked in his deposition, "[s]o the oral contract I guess that you are trying to enforce is the contract that would have required [Doosan] to sell the product to you so that you could [sell it at a higher price] to McKee; correct?" (Emphasis added.) Gregory Knox answered, "[c]orrect." Gregory Knox also stated in his deposition, "[t]he Doosan machine we're talking about here * * * [i]t's $250,000."
 {¶ 11} Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos.,67 Ohio St.3d 344, 346, 1993-Ohio-191. Reviewing the evidence in Gregory Knox's deposition, there is no doubt that the oral contract between Knox and Doosan was for the sale of a Doosan machine tool. Furthermore, there is no doubt that the Doosan machine tool is a good that has a price exceeding $500. There is no writing sufficient to indicate that a contract for sale was made between the parties and signed by the party against whom enforcement is sought.
 {¶ 12} Therefore, no genuine issue of fact exists as to the breach of the oral contract. As a matter of law, an oral contract for the sale of goods exceeding $500 is not enforceable. See R.C. 1302.04. Doosan is entitled to judgment and reasonable minds can come to but one conclusion, and that conclusion is adverse to Knox.
 {¶ 13} However, Knox argues that even if the contract was for the sale of goods, a signed writing is not required. Knox contends that a signed writing is not required because the goods were specially manufactured to McKee's specification, therefore, the transaction is excepted from the statute of frauds.
 {¶ 14} R.C. 1302.04(C) reads as follows: "(C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable: (1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement."
 {¶ 15} The exception for specially manufactured goods, according to its terms in R.C. 1302.04, only applies when the seller, not the buyer, of the goods seeks to obviate the statute of frauds defense. SeeGlobal Truck Equipment Co. v. Palmer Mach. Works (N.D.Miss. 1986),628 F. Supp. 641, 648, 42 UCC Rep. Serv. 1250. Therefore, even if the goods were specially manufactured for Knox to McKee's specifications the exception does not apply to Knox. No genuine issue of fact exists as to the specially manufactured goods exception. The specially manufactured exception is not applicable to Knox as the buyer of the machine tool. Consequently, Doosan is entitled to judgment and reasonable minds can come to but one conclusion, and that conclusion is adverse to Knox.
 {¶ 16} Knox argues that by divulging the name of the potential purchaser, Knox partially performed its part of the contract and therefore the contract should fall under the part performance doctrine.
 {¶ 17} Gregory Knox stated in his deposition that the oral contract he was trying to enforce was for the sale of a machine tool. However, Doosan never delivered the machine tool to Knox and Knox never made any payments to Doosan for the machine tool. Where there has been no delivery of goods, no payment, nor any other action to indicate a meeting of the minds between the parties, the partial performance exception to the statute of frauds cannot be invoked. See Columbus TradeExchange, Inc. v. AMCA International Corp. (S.D.Ohio 1991),763 F. Supp. 946, 951, 15 UCC Rep. Serv.2d 51.
 {¶ 18} Knox cites three cases in support of the partial performance argument. However, all three cases involve factual situations distinguishable from this case. In Frank Adams Co. v. Baker
(1981), 1 Ohio App.3d 137, the partial performance exception was applied because the steel rods the defendant ordered were delivered to defendant. Defendant accepted the rods and then sold some of the rods to a third party. In Furguson v. Strader (1994), 94 Ohio App.3d 622, the partial performance exception was applied because the defendant delivered two mares for one breeding season in exchange for boarding them.[1] InHanzel v. Morgan Brothers Jewelers (May 24, 1995), Scioto App. No. 93 CA 2254, the partial performance exception was applied because a piece of jewelry was delivered to secure a $4,000 loan.
 {¶ 19} In each of the cases cited by Knox, the partial performance exception was applied because the goods orally contracted for were delivered and accepted. In this case, no goods were delivered. Doosan never delivered a machine tool to Knox. Knox never made any payments on the machine tool to Doosan. No other action to indicate a meeting of the minds between the parties regarding the sale of the machine tool exists. Therefore, the partial performance exception to the statute of frauds is not applicable to Knox. Consequently, Doosan is entitled to judgment and reasonable minds can come to but one conclusion, and that conclusion is adverse to Knox.
 {¶ 20} Knox argues the trial court analyzed the wrong tort in granting Doosan's summary judgment motion as to the claim of tortious interference with a business relationship. Knox argues the trial court used the test to prove a claim of tortious interference with a contract and not tortious interference with a business relationship.
 {¶ 21} In its decision, the trial court relied upon Andrews v.Carmody (2001), 145 Ohio App.3d 27, which discusses tortious interference with a contract. The elements of tortious interference with a contract are (1) the existence of a contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages from that breach.
 {¶ 22} The elements of tortious interference with a business relationship are (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom.Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc. (2001),145 Ohio App.3d 514, 525.
 {¶ 23} The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes interference with prospective contractual relations, not yet reduced to a contract. Lapping v. HM Health Serv., Trumbull App. No. 2000-T-0061, at 18, 2001-Ohio-8723. In Ohio, "such interference must be intentional because Ohio does not recognize negligent interference with a business relationship." Bauer v. Commercial Aluminum Cookware Co. (2000),140 Ohio App.3d 193, 199. See, also, Smith v. Ameriflora 1992, Inc.
(1994), 96 Ohio App.3d 179, 186; Burnside v. Leimbach (1991),71 Ohio App.3d 399, 404.
 {¶ 24} The business relationship between Knox and McKee regarding the purchase of the Doosan machine tool was still in the negotiation phase. Gregory Knox was asked in deposition, "[d]id McKee promise to purchase a product from you rather than from Advanced?" Knox answered, "[n]o."
 {¶ 25} Additionally, when Robert Mead, the machine purchaser for McKee was asked, "[d]id you feel like Knox had earned the sale on the basis of their work for you," Mead answered, "[a]t that point in the investigation we had not yet decided to buy either [machine tool.] I had concerns about Knox from the standpoint that they were not a large company, * * * [w]e had dealt with Advanced Machinery for a large number of years at McKee, so we had confidence in the company." Mead was also asked, "[d]id Al Stroup [president of Doosan] interfere in any investigations you were having with Knox?" Mead replied, "[n]o." When Mead was asked, "[d]id you consider McKee as having a contract with Knox?" he answered, "[n]o." Furthermore, as Advanced was Doosan's exclusive distributor, Doosan had a privilege to act in good faith to advance the interests of Advanced. See Juhasz v. Quick Shops (1977),55 Ohio App.2d 51, 57. Informing McKee that Advanced is Doosan's exclusive distributor is within that privilege.
 {¶ 26} Since there was no contract, obviously there can be no tortious interference with a contract. Furthermore, Mead stated that Stroup, acting on behalf of Doosan, did not intentionally interfere with McKee's investigations or decision regarding which company would broker the machine tool. McKee contacted Doosan and asked with which company McKee should negotiate the purchase of the machine tool. Doosan merely informed McKee that Advanced was Doosan's exclusive distributor. Therefore, there was no intentional interference on the part of Doosan causing a breach or termination of the business relationship between Knox and McKee.
 {¶ 27} Consequently, no genuine issue of fact exists as to the tortious interference claim. Without a contract and without intentional interference on Doosan's part, Knox cannot prevail on either theory of tortious interference. Doosan is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion on the tortious interference claim, and that conclusion is adverse to Knox.
 {¶ 28} Knox argues genuine issues of material fact exist as to the claim of fraud. Knox argues that there is evidence that Doosan made the false representation that Doosan would protect Knox. Knox argues after Doosan made the false representation and Knox convinced McKee to purchase a Doosan machine tool, Doosan directed McKee to purchase the machine tool through Advanced.
 {¶ 29} In order to prevail on a theory of fraud, "appellant must establish: (1) a false representation made by appellees; (2) appellees' knowledge of the falsity; (3) intent to mislead on the part of appellees; (4) reliance by claimant; and (5) injury as a result of the claimant's reliance." Manning v. Len Immke Buick (1971),28 Ohio App.2d 203, 205, citing Crabbe v. Freeman (M.C. 1959), 81 Ohio Law Abs. 65.
 {¶ 30} Knox alleges Doosan made the promise to protect "around late January or early February." Knox alleges McKee was satisfied with the product and the final price quotation given on February 16, 2000. However, McKee did not receive authorization from its corporate headquarters to make the purchase and the sale was never consummated. Later, when McKee was in the position to purchase the machine tool, Doosan had already entered into the exclusive distributorship with Advanced. McKee purchased the machine tool from Advanced in May 2000.
 {¶ 31} Knox has presented no facts from which it can be inferred that any statement on behalf of Doosan demonstrated the intent to mislead. Furthermore, Alan Stroup states in his affidavit, "[i]f McKee had placed its purchase order in April 2000 with Knox instead of Advanced, I would not have accepted any corresponding purchase order from Knox, since that would have placed Doosan in breach of its exclusive agreement with Advanced." However, even if Knox did receive protection, which Doosan denies, the outcome would have been the same. Knox would not have been able to sell the machine tool to McKee.
 {¶ 32} Since Doosan sought summary judgment, Doosan had the burden to negate the fraud alleged in the complaint. Doosan has shown that even if Knox were promised protection from Doosan for the McKee project, that agreement would have expired by the time McKee was in a position to purchase the machine tool from Knox. Stroup stated in his deposition that Doosan's policy is to "protect projects, not accounts." According to Stroup, protection from Doosan on specific projects lasts "30 days in most cases, 60 days in some, and very rarely 90 days, never 120 days." Consequently, if there was an agreement to protect, that agreement was expired. Therefore, Knox could not have made the sale to McKee even if Doosan gave Knox protection for the McKee project.
 {¶ 33} Furthermore, McKee and Knox had no contract for the sale of the machine tool and McKee had voiced anxiety about entering into a contract with Knox. Mead, McKee's machine buyer, stated in his deposition, "I had concerns about Knox from the standpoint that they were not a large company * * *." Since Knox could not have made the sale based upon the expired protection agreement, Knox could not have made a profit on the sale. Therefore, there was no injury to Knox as a result of any reliance upon Doosan's alleged promise to protect. Without injury, and without intent to mislead on the part of Doosan, Knox cannot prevail on a claim of fraud. Viewing the evidence, reasonable minds could only come to one conclusion and that conclusion is adverse to Knox's claim of fraud. The assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Under R.C. 1302.01(A)(8), livestock including the unborn young of animals is defined as a good.