[Cite as *Silveous v. 5 Starr Salon & Spa, L.L.C.*, 2023-Ohio-841.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Abbey N. Silveous, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 22AP-456 |
| v. | : | (C.P.C. No. 18CV-10047) |
| 5 Starr Salon and Spa, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 16, 2023

**On brief:** *Guzzo Law Office*, *LLC*, and *Peggy S. Guzzo*, for appellant. **Argued:** *Peggy S. Guzzo*.

**On brief:** *Koenig & Owen*, *LLC*, and *Charles A. Koenig*; *Moore & Yaklevich*, *LLC*, and *John A. Yaklevich*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Abbey N. Silveous, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendants-appellees, Charles A. Koenig ("Koenig") and Koenig & Owen, LLC ("Koenig & Owen") (together, where appropriate, "appellees"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} At all times relevant to this appeal, Kirsten Bailey owned and operated 5 Starr Salon and Spa, LLC ("5 Starr") in Grove City. On July 3, 2017, Bailey hired appellant as an esthetician. Bailey provided appellant with a copy of 5 Starr's Team Member Handbook ("Handbook"), which sets forth the policies and procedures for employees of the salon. The appendix to the Handbook includes the following language:

5 STARR Salon and Spa Handbook is not a contract. Accordingly, it should not be interpreted to create any expressed or implied contractual rights between 5 STARR Salon and Spa and any team member. The contents of this Handbook do not constitute the terms of a contract of employment, and do not create any promise or assurance of continued employment in the future.

(Second Am. Compl., Ex. A-2, Handbook at 33.)

{¶ 3} In addition to the above, the appendix also includes the following language:

This appendix contains team members' copies of the documents listed below that team members are required to sign as a condition of employment by 5 STARR Salon and Spa.

Confidentiality And Non-Compete Agreement to follow

Acknowledgement of Receipt Of Team Member Handbook to follow

(Emphasis omitted.) (Handbook at 33.)

{¶ 4} The two-page Confidentiality and Non-Compete Agreement ("Agreement") states in part:

During the course of employment with the 5 STARR Salon and Spa, team members may be given or have access too [sic] confidential, trade secrets, and proprietary information pertaining to the 5 STARR Salon and Spa and its operation. That information incudes any technical, economic, financial, client list, marketing or other information that is not generally known or is not common knowledge among competitors or other individuals or companies who may want to possess it or would find it useful.

All confidential information is disclosed or revealed with the understanding and agreement by team member that such information is considered to be secret and proprietary to 5 STARR Salon and Spa and is a valuable commercial asset of 5 STARR Salon and Spa. As such, team member agrees that during, and subsequent to, the time of employment, team member will not make use whatsoever, directly or indirectly, of the 5 STARR Salon and Spa's confidential information except for the purposes specified by the 5 STARR Salon and Spa or required to perform team member's job for the 5 STARR Salon and Spa.

Team member also understands and agrees that no solicitation of any current client or potential client of 5 Starr Salon and Spa, during the course of employment or otherwise divert or attempt to divert any existing business of 5 Starr Salon and Spa. Team member will not either during employment with 5 Starr Salon and Spa and after employment with 5 Starr Salon for a period of 1 year thereafter, either directly or indirectly, for any third party solicit, induce, recruit, or cause another person in the employ of 5 Starr Salon and Spa to terminate their employment for the purpose of joining, associating or becoming employed with any business or activity which is in competition with any services provided by 5 Starr Salon and Spa. The geographical area to which this applies is a ten (10) mile radius. Both parties agree that the time and scope of this agreement is reasonable.

This obligation shall remain in effect at all times during team member's employment with the 5 STARR Salon and Spa and following termination of employment with the 5 STARR Salon and Spa.[1]

(Handbook at 34-35.)

{¶ 5} Appellant acknowledged in writing that she had received a copy of the Agreement and would adhere to the policies contained therein. Appellant also acknowledged in writing that she had received a copy of the Handbook.

{¶ 6} Over the course of her employment with 5 Starr, appellant developed a substantial clientele, predominately providing eyelash extension services. However, by late 2017, the employment relationship between appellant and Bailey deteriorated to the point that appellant decided to leave her employment with 5 Starr. Before submitting her resignation, appellant asked an attorney to review the Handbook and Agreement. According to appellant, that attorney told appellant the Agreement was invalid, would not hold up in court, and she was free to seek employment elsewhere. Appellant submitted her resignation on Saturday, December 2, 2017. When Bailey reminded appellant about the restrictions set forth in the Agreement, appellant responded that she had found "loopholes" therein based on conversations she had with an attorney. (Bailey Depo. at 25.)

---

[1] Bailey drafted the Handbook and Confidentiality and Non-Compete Agreement without the aid of legal counsel.

{¶ 7} On Monday, December 4, 2017, Bailey discovered that several supplies and products were missing from the room exclusively used by appellant during her employment. Accordingly, she filed a police report documenting the thefts. On that same day, 5 Starr began receiving calls from several of appellant's clients requesting cancellation of their upcoming appointments and refunds of their prepaid treatment packages. According to Bailey, these clients averred that they planned to follow appellant to her new employer, Artistic Angle Hair Salon ("Artistic Angle"), a nearby competitor of 5 Starr. In addition, many of these clients informed 5 Starr they had been directly solicited by appellant. Bailey believed that appellant had begun soliciting these clients while still employed at 5 Starr. Bailey also discovered that appellant was marketing herself on the internet and social media as now providing esthetician services at Artistic Angle.

{¶ 8} Believing that appellant was bound by the terms of the Agreement, Bailey sought to prevent appellant from providing services at Artistic Angle. As such, on December 5, 2017, she retained Koenig to represent her and 5 Starr in enforcing their rights against appellant. During their initial discussion, Bailey explained the circumstances of appellant's employment history and departure, Bailey's understanding of the terms of the Agreement, as well as appellant's alleged solicitation of 5 Starr clients, alleged employment with a nearby competitor, and alleged theft of 5 Starr's proprietary confidential information, including customer lists, pricing lists, and salon products. Following this discussion, Koenig requested Bailey provide him with copies of all relevant documents and materials. Koenig reviewed the Handbook and Agreement, reports of client cancellations, e-mails and text messages exchanged between Bailey and appellant, the police report, and interviews of 5 Starr employees Chaunte Gallagher and Heather Edgington. According to Koenig, Gallagher and Edgington understood the Agreement to prohibit them from soliciting 5 Starr clients or working for a competitor of 5 Starr within a ten-mile radius; in addition, Gallagher and Edgington believed appellant was set to begin working at Artistic Angle.

{¶ 9} Following this review, Bailey instructed Koenig to prepare a letter to appellant demanding she cease and desist from violating the post-employment restrictive covenants set forth in the Agreement and that she return 5 Starr's property. Bailey also instructed Koenig to prepare a letter to Artistic Angle advising it of appellant's post-

employment restrictive covenants and requesting it refrain from facilitating appellant's violations thereof. Bailey instructed Koenig to deliver both letters to appellant and Artistic Angle at Artistic Angle's place of business. In accordance with Bailey's directives, Koenig prepared and delivered letters to appellant and Artistic Angle dated December 6 and 7, 2017, respectively.[2]

{¶ 10} In the December 6, 2017 letter to appellant, Koenig averred that he represented 5 Starr and had been informed that she had resigned from 5 Starr on December 2, 2017 and was now employed or had a contractor agreement with Artistic Angle. Koenig reminded appellant of her on-going obligations to 5 Starr as set forth in the Handbook and Agreement. In particular, Koenig noted the restrictions on appellant's post-employment activities, including, but not limited to, refraining from soliciting or recruiting 5 Starr customers and employees and engaging in any competitive activities within 10 miles of 5 Starr for a one-year period beginning on the date of her resignation, retaining or using 5 Starr confidential information, including customer and/or pricing lists, and failing to return 5 Starr equipment, supplies, and materials. Koenig further averred that it was his understanding that appellant had already engaged in prohibited activities including soliciting 5 Starr clients for whom she provided services during her employment with 5 Starr, using 5 Starr proprietary, confidential, and trade secret information, and retaining supplies and materials belonging to 5 Starr for use in her new employment. Koenig advised appellant to cease all violations and demanded return of any 5 Starr property. In addition, Koenig averred that a copy of the letter was being sent to Artistic Angle with the expectation that Artistic Angle would provide 5 Starr with written assurances that it had directed appellant to refrain from directly or indirectly engaging in any of the noted prohibited activities.

{¶ 11} In the December 7, 2017 letter to Artistic Angle, Koenig averred he was the attorney for 5 Starr and had been informed that appellant had recently begun working there. Koenig noted that as a condition of her employment, appellant was, and remained, subject to several on-going restrictions on her post-employment activities, including that she refrain from soliciting 5 Starr customers or employees, using 5 Starr's proprietary,

---

[2] The letters are written on Koenig & Long, LLC letterhead. On December 19, 2018, Koenig & Long, LLC filed an amendment with the Ohio Secretary of State changing its name to Koenig & Owen, LLC.

confidential, and trade secret information, engaging in activities competitive with 5 Starr, and using any of 5 Starr's supplies or materials. Koenig averred that appellant was not prohibited from working at Artistic Angle; rather, she was only restricted from providing services at Artistic Angle that competed with those provided by 5 Starr and from soliciting 5 Starr's clients and employees. Koenig requested written assurances that Artistic Angle would direct appellant to refrain from directly or indirectly engaging in any of the foregoing prohibited activities. Koenig also noted that appellant had been advised in writing that she was in violation of the Agreement. He further advised that a copy of the December 6, 2017 letter to appellant was enclosed so as to provide Artistic Angle with a more complete understating of the nature of appellant's post-employment obligations.

{¶ 12} On December 7, 2017, Koenig was contacted by an attorney who averred that he was calling on behalf of Artistic Angle, but did not represent either Artistic Angle or appellant. That attorney opined that the Agreement did not restrict appellant from working at Artistic Angle. Koenig received no other response to the December 6 and 7, 2017 letters.

{¶ 13} During the remainder of December 2017, Bailey had several conversations with Koenig about monetary losses suffered by 5 Starr resulting from client cancellations of services and Bailey's suspicion that appellant was using 5 Starr proprietary and confidential information. As a result, Bailey instructed Koenig to commence litigation on behalf of 5 Starr to enforce its rights against appellant. To that end, on January 7, 2018, Koenig, on behalf of 5 Starr, filed a complaint for preliminary and permanent injunctive relief and damages against appellant, alleging, inter alia, that she had breached the Agreement and misappropriated trade secrets by soliciting clients, while she was employed at 5 Starr, to follow her to Artistic Angle immediately following the termination of her employment with 5 Starr. In August or September 2018, Bailey instructed Koenig to dismiss the lawsuit and terminate all litigation efforts against appellant. On October 16, 2018, 5 Starr voluntarily dismissed the complaint against appellant, without prejudice.

{¶ 14} Thereafter, on December 4, 2018, appellant filed a complaint against 5 Starr, Bailey, and appellees. As to 5 Starr and Bailey, appellant's allegations involved non-payment of a promised signing bonus, false claims of theft, filing a false police report, causing Koenig to send the December 6 and 7, 2017 letters to appellant and Artistic Angle, and filing the January 7, 2018 lawsuit. Appellant asserted eleven causes of action: (1) fraud

by false statements, (2) breach of contract, (3) tortious interference with business opportunity, (4) unjust enrichment, (5) violation of Ohio's statute on minimum wages and hours, (6) violation of minimum wages and hours under Article II, Section 34a, of the Ohio Constitution, (7) account, (8) retaliation, (9) defamation per se, (10) breach of fiduciary duty, and (11) filing a false police report and abuse of process. As against appellees, appellant asserted claims for defamation per se and tortious interference with business opportunity arising from the preparation and delivery of the December 6 and 7, 2017 letters to appellant and Artistic Angle. Appellant also asserted a claim for respondeat superior against Koenig & Owen. In addition, appellant asserted a claim against 5 Starr and Koenig, individually, for filing a frivolous lawsuit.

{¶ 15} In response to the complaint, appellees, on January 7, 2019, filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief could be granted on the grounds of attorney immunity. Appellees based the motion on the rule set forth by the Supreme Court of Ohio in *Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), i.e., that an attorney is immune from liability to third persons arising from the attorney's good-faith performance on behalf of, and with the knowledge of the attorney's client, unless the third person is in privity with the attorney's client or the attorney acts maliciously. In response to the motion, appellant sought and received leave to amend her original complaint. Appellant filed an amended complaint on January 4, 2019, asserting the same claims against the same parties.

{¶ 16} On January 8, 2019, appellees filed a Civ.R. 12(B)(6) motion to dismiss the amended complaint on the same grounds asserted in the original motion to dismiss, i.e., failure to state a claim upon which relief could be granted on the grounds of attorney immunity. On April 4, 2019, the trial court, having already granted appellant leave to file the amended complaint, filed a decision and entry rendering moot appellees' January 7 and 8, 2019 motions to dismiss.

{¶ 17} On February 6, 2019, appellant filed a motion for leave to file instanter her second amended complaint. The trial court granted the motion, and appellant filed a second amended complaint against 5 Starr, Bailey, and appellees on March 12, 2019.[3]

---

[3] Appellant denominated her causes of action against appellees as "Against Defendant Charles A. Koenig, individually and Member of Koenig & Long, LC [sic] NKA Koenig & Owen, LLC, and Koenig & Owen, LLC, previously known as Koenig & Long, LLC (Collectively the 'Koenig Defendants')." (Second Am. Compl. At 21.)

Against 5 Starr and Bailey, appellant asserted essentially the same causes of action raised in her original and amended complaints, with some slight variations.[4] Against appellees, appellant asserted the same three causes of action raised in the original and amended complaints, with some additional verbiage in the defamation per se and tortious interference with economic relations claims. Specifically, appellant asserted that Koenig acted in "bad faith" and with "actual malice" in preparing and delivering the December 6 and 7, 2017 letters to appellant and Artistic Angle. (Second Am. Compl. at ¶ 117-19, 127.) Appellant claimed that Koenig maliciously made false and defamatory statements in the December 6 and 7, 2017 letters as to the contents of the Agreement, appellant's violations thereof, and appellant's retention of 5 Starr's property, and that Koenig's delivery of those letters to Artistic Angle, a prospective employer, defamed her and caused her to lose the benefits of her economic relationship with Artistic Angle.

{¶ 18} 5 Starr and Bailey filed an answer to appellant's second amended complaint, and 5 Starr filed a counterclaim for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with business relationships, and conversion. Appellees filed a combined motion to strike and Civ.R. 12(B)(6) motion to dismiss appellant's second amended complaint. Specifically, appellees moved to strike the word "malice" from the second amended complaint and to dismiss the claims against them on grounds of attorney immunity. After the trial court denied the combined motion, appellees filed an answer to the second amended complaint and asserted several affirmative defenses, including that the complaint failed to state a claim upon which relief could be granted. Appellant then filed a motion for leave to file a third amended complaint, which the trial court denied.

{¶ 19} Koenig eventually withdrew as counsel for 5 Starr and Bailey; new counsel appeared on their behalf and, with leave of court, filed an amended answer to appellant's second amended complaint. Appellant, 5 Starr, and Bailey ultimately settled their claims. On July 27, 2021, the trial court entered an "Agreed Stipulated Order and Judgment Entry of Partial Dismissal," pursuant to which the trial court dismissed all asserted claims and

---

[4] Appellant renamed her claim for tortious inference with employment opportunity to tortious interference with economic relations, abandoned the account and retaliation claims, and added claims for conversion and unfair competition.

counterclaims between those parties with prejudice. The order avers that appellant's claims against appellees remained pending.

{¶ 20} Thereafter, on April 4, 2022, appellees[5] filed a Civ.R. 56 motion for summary judgment. Appellees asserted that the purpose of the motion for summary judgment was not to determine whether appellant or 5 Starr and Bailey would prevail on their competing claims against one another as to the enforceability of the Handbook and Agreement; rather, the motion's purpose was to determine whether Koenig's actions in representing his clients were made in good faith and not maliciously. To that end, appellees noted that appellant's claims against them were based solely on Koenig's act of preparing and delivering the December 6 and 7, 2017 letters at the direction and on behalf of his clients regarding appellant's post-employment restrictions pursuant to the Agreement. Appellees argued there were no disputed issues of material fact and that because Koenig's actions were taken solely in his capacity as counsel for his (now former) clients, appellees were immune from liability to appellant (a third-party plaintiff), as no evidence established that Koenig was in privity with appellant or that his actions were taken in bad faith or with malice. Appellees supported their motion for summary judgment with Koenig's own affidavit and the depositions of appellant and Bailey.

{¶ 21} In particular, appellees noted Bailey's deposition testimony that she reviewed and authorized the letters to appellant and Artistic Angle. Appellees further noted appellant's deposition testimony admitting that she did not believe that Koenig fabricated the statements made in the letters regarding the Agreement. Appellees also noted Koenig's affidavit testimony that he prepared and delivered the letters at Bailey's direction and based the content of the letters and the decision to deliver them on more than just Bailey's claims and representations. In particular, appellees noted Koenig's averments that before sending the letters, he reviewed the pertinent documents and verified with other 5 Starr employees that their understanding of the Agreement was consistent with Bailey's understanding of the Agreement.

{¶ 22} Appellees also noted Koenig's attestation that he had no knowledge of appellant prior to his engagement by Bailey and 5 Starr on December 5, 2017 and had never met appellant prior to Bailey's June 24, 2019 deposition. Appellees further noted

---

[5] Koenig filed the motion for summary judgment pro se and as attorney for Koenig & Owen.

appellant's admission that she had no relationship with Koenig, he had never represented her, nor had she ever asked him to represent her. In addition, appellees noted Koenig's testimony that he harbored no hatred, ill will, or spirit of revenge toward appellant and did not write the December 6 and 7, 2017 letters in disregard of her rights; rather, he wrote the letters to advance in good faith the rights and interests of his clients.

{¶ 23} As an alternative to their immunity argument, appellees maintained that appellant could not prevail on the merits of her claims for defamation per se and interference with economic relations and that appellant's settlement with Bailey and 5 Starr terminated those claims. Lastly, appellees asserted that if Koenig was not liable to appellant, Koenig & Owen could not be liable under the theory of respondeat superior.

{¶ 24} On April 26, 2022, appellant filed a corrected memorandum contra the motion for summary judgment.[6] Therein, appellant asserted that "[t]he entirety of [appellees'] motion [for summary judgment] depends on whether or not there was a contract between [appellant] and [5 Starr], and if so, if it was breached by [appellant]." (Apr. 26, 2022 Memo Contra at 1-2.) Appellant argued that because that issue of fact was disputed by the parties, summary judgment was inappropriate. Appellant further maintained that disputed issues of fact precluded summary judgment as to whether Koenig made factually incorrect statements in the December 6 and 7, 2017 letters regarding: (1) the contents of the Agreement, (2) appellant's alleged violation of that Agreement, (3) the police report filed by Bailey, and (4) appellant's alleged employment at Artistic Angle. Appellant maintained that Koenig should have known that the Agreement was unenforceable and that the police report was false. She further maintained that Koenig delivered the December 6 and 7, 2017 letters to Artistic Angle despite having been informed that appellant was not employed there. Appellant asserted that Koenig's actions in this regard were made in bad faith and with actual malice; thus, he was not entitled to attorney immunity. Appellant supported her memorandum contra with her own affidavit and deposition, Koenig's affidavit, and the depositions of Bailey and 5 Starr employees Leona Beck and Heather Edgington. Appellant also attached to her memorandum contra expert reports from attorneys Joseph W. Borchelt and John C. Camillus.

---

[6] The corrected memorandum contra was accompanied by a motion for leave to file it instanter. The trial court granted the motion for leave in its June 24, 2022 decision and entry granting appellees' motion for summary judgment.

{¶ 25} Appellant specifically noted in her memorandum contra her affidavit and deposition testimony that she signed an acknowledgement that she had received a copy of the Handbook but understood that the Handbook did not restrict her from competing with 5 Starr following her separation from employment. She further noted her deposition testimony that she could not have violated the Agreement because it was not a contract. Appellant also pointed to her affidavit and deposition testimony averring she was never employed by Artistic Angle, as the receipt of Koenig's letter led the owner of Artistic Angle to rescind her previous "oral agreement" regarding her employment. As to the police report, appellant noted both her affidavit and deposition testimony that she did not steal any items from 5 Starr as well as the deposition testimony of Beck and Edgington stating that they personally had never seen appellant leave the salon with any of 5 Starr's products or property.

{¶ 26} Appellant also noted in her memorandum contra her affidavit testimony that the opinions of both experts confirmed her belief that "what Mr. Koenig did was willful with actual malice because he had to know what he was stating in the letters [was] false and defamatory and was without justification and intended to prevent me from working at Artistic Angle Hair Salon." (Silveous Aff. at ¶ 17.) In his March 26, 2020 expert report, Borchelt opined that neither the Handbook nor the Agreement prohibited an employee from competing with 5 Starr or from soliciting 5 Starr's clients after the employee's separation from employment. Borchelt further opined that because a reasonably competent attorney would have concluded as such, Koenig knew that the statements he made to the contrary in the letters to appellant and her prospective employer (Artistic Angle) were false, yet he recommended his client disseminate the letters. Borchelt also opined that Koenig's actions in sending false cease and desist letters to appellant and Artistic Angle constituted bad-faith conduct for which third-party liability may apply. In his April 17, 2021 expert report, Camillus opined that the Agreement does not prohibit post-employment competitive activity and that no reasonable attorney could conclude otherwise. Camillus further opined that Koenig's decision to send letters to appellant and Artistic Angle falsely claiming that appellant was prohibited from engaging in competitive activities within ten miles of 5 Starr for a period of one year constituted malice, as he had no legitimate interest

to protect on behalf of 5 Starr and sent the letters either knowing that it would cause harm to appellant or with total disregard of her rights.

{¶ 27} On May 2, 2022, appellees filed a reply to appellant's corrected memorandum contra. Appellees maintained appellant had provided no evidence to demonstrate that Koenig acted in bad faith or with malice in preparing and delivering the letters on behalf of 5 Starr and Bailey, and, as such, had failed to meet her reciprocal burden under Civ.R. 56.

{¶ 28} On June 24, 2022, the trial court issued a decision and entry granting appellees' motion for summary judgment. Applying the rule governing attorney immunity set forth in *Scholler*, 10 Ohio St.3d 98, and its progeny, the trial court found no claim of privity between the parties and that appellant failed to demonstrate a genuine issue of material fact as to whether Koenig, in preparing and disseminating the letters to appellant and Artistic Angle, acted in good faith with 5 Starr's knowledge, or acted maliciously.

## II. Assignments of Error

{¶ 29} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] The court of common pleas erred by using the wrong framework and failed to consider whether Attorney Koenig's statements were defamatory as a matter of law.
>
> [II.] The court of common pleas used the wrong standard to determine that Defendants were immune from liability and erred by finding that the litigation privilege applied.
>
> [III.] The court of common pleas erred by applying the wrong definition of malice and finding no material facts in dispute.
>
> [IV.] The court of common pleas erred by failing to consider that Attorney Koenig's law firms may be vicariously liable for his defamatory statements.

## III. Analysis

{¶ 30} Initially, we set forth the standard of review applicable to summary judgment dispositions. An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and

affords no deference to the trial court's decision."    (Internal quotations and citations omitted.)  *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9.  Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).  In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party.  *Premier Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

**{¶ 31}** Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  If the moving party fails to satisfy the initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial.  *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

**{¶ 32}** Appellant contends in her first assignment of error the trial court utilized the wrong framework in considering appellees' motion for summary judgment and in failing to consider whether Koenig's statements were defamatory as a matter of law.  In essence, appellant contends the trial court was required to address her defamation claim before it could consider whether appellees were entitled to attorney immunity.

**{¶ 33}** Preliminarily, we note that appellant did not move for summary judgment on any of the claims she asserted against appellees.  Thus, the merits of her defamation claim were not before the trial court.  The only issue before the trial court was raised in appellees'

motion for summary judgment, i.e., whether appellees were entitled to summary judgment on appellant's tort claims pursuant to the attorney-immunity rule set forth in *Scholler*.[7]

{¶ 34} The case appellant cites as authority for her contention that a trial court must first consider the merits of a plaintiff's underlying claim before it can determine whether an attorney is immune from liability for that claim does not establish such a framework. That case, *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, involved, inter alia, a defamation action against a non-profit corporation for statements made in an internal memorandum and statements subsequently made by its attorney in a newspaper. Following a detailed discussion of the law governing defamation, the Supreme Court concluded that the corporation was not liable for the statements made in its internal memorandum or the statements published in the newspaper because the statements were not defamatory as a matter of law. As no claims were asserted against any attorney, the issue of attorney immunity was not considered. The only link between *Am. Chem. Soc.* and attorney liability was the court's inquiry into whether a client could be held liable for statements made by its counsel to the media. *Id.* at ¶ 87. As to that issue, the Supreme Court held that a client is vicariously liable for its attorney's defamatory statements only if the client authorized or ratified the statements. *Id.* at ¶ 89.

{¶ 35} Further, neither of the other cases appellant cites, i.e., *Hersh v. Grumer*, 8th Dist. No. 109430, 2021-Ohio-2582, and *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2d Dist. No. 28581, 2021-Ohio-3049, support her argument that a trial court must first consider the merits of a plaintiff's claims before it can determine whether the defendant-attorney is immune from liability for those claims. Although both cases involved defamation claims, attorney immunity was not at issue, as the defamation claims were not asserted against counsel. Indeed, the *Hilgeman* court noted, "[a]s in *Am. Chem. Soc.*, the defamation claim here has been asserted only against the client (HNB), not against * * * HNB's outside counsel." *Id.* at ¶ 130.

{¶ 36} Appellant has thus failed to establish the trial court utilized the wrong framework in considering appellees' motion for summary judgment and in failing to

---

[7] Appellees' motion for summary judgment alternatively argued that in the event the trial court ruled against them on their attorney-immunity argument, they were entitled to judgment on the merits of appellant's claims. The trial court granted summary judgment to appellees on attorney-immunity grounds and dismissed all three of appellant's claims.

consider whether Koenig's statements were defamatory as a matter of law. As such, appellant's first assignment of error is overruled.

{¶ 37} Appellant's second and third assignments of error are interrelated and will be considered together. In her second assignment of error, appellant contends the trial court applied the wrong standard in determining that appellees were immune from liability and erred by finding that the litigation privilege[8] applied. In her third assignment of error, appellant contends the trial court erred in applying the wrong definition of malice and in finding that no material facts were in dispute. Appellant's arguments are somewhat derivative of her first assignment of error, as she essentially contends that once the court determines that she has set forth a meritorious defamation claim, the court must then analyze whether appellees avoid liability under the standards applicable to defamation claims. However, as noted under our discussion of the first assignment of error, appellant's defamation claim was not at issue before the trial court, and, in any event, the case law cited by appellant in support of her first assignment of error does not require a court to address the merits of her defamation claim.

{¶ 38} In their motion for summary judgment, appellees argued they were immune from liability for the claims appellant asserted against them under the attorney-immunity rule set forth in *Scholler*. In *Scholler*, the Supreme Court considered whether a mother on behalf of her son may maintain an action against the mother's former attorney in malpractice even though the son was a third party to the attorney-client relationship that existed between the mother's former attorney and the mother. The court held that "an

---

[8] In its decision and entry, the trial court averred that "Koenig and his law firm are immune from liability and summary judgment is proper." (June 24, 2022 Decision & Entry at 5.) Later in the decision, the trial court stated that "[appellant] is entitled to immunity from liability to [appellant] under well-settled Ohio law, and thus, summary judgment is warranted." Three sentences after that statement, the court asserted that "[appellant's] claims against [appellees] are barred by the litigation privilege set forth in Ohio case law." (June 24, 2022 Decision & Entry at 11.) "The litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for *statements* made during and relevant to judicial proceedings." (Emphasis sic.) *Reister v. Gardner,* 164 Ohio St.3d 546, 2020-Ohio-5484, ¶ 14, citing *Erie Cty. Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210 (1930); *Willitzer v. McCloud*, 6 Ohio St.3d 447-48 (1983). As discussed in this decision, appellees moved for summary judgment on grounds of attorney immunity from third-party lawsuits under *Scholler* and its progeny. The trial court analyzed appellees' motion under the standards set forth in those cases and concluded that appellees were immune from liability from appellant's third-party lawsuit. The court did not address or even mention the litigation privilege until the last paragraph of its decision. As such, we conclude it appears the reference to the litigation privilege was inadvertent. As the court's grant of summary judgment was based on attorney immunity from third-party lawsuits, it is not necessary for us to address the litigation privilege.

attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *Scholler* at paragraph one of the syllabus. *See also Simon v. Zipperstein*, 32 Ohio St.3d 74, 77 (1987), quoting *Scholler* ("[w]e reiterate our holding in the first paragraph of the syllabus of *Scholler* that '[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously' "). The *Simon* court explained the reasoning underlying the *Scholler* holding:

> The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. As was stated by the court in *W.D.G., Inc.* [*v. Mut. Mfg. & Supply Co.*, (Franklin App. 1976), 5 O.O.3d 397]:

> "* * * Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself." *Id.* at 399-400.

*Id.* at 76.

{¶ 39} The Supreme Court did not limit its holdings in *Scholler* or *Simon* to a particular genre of third-party tort claim. Further, none of the cases we found applying the *Scholler*/*Simon* attorney-immunity rule, including those from this court, have held that the rule is to be applied differently depending upon the nature of the third-party's claim. *See, e.g.*, *Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-1057 (10th Dist.); *Kim v. Randal A. Lowry Assocs.*, 9th Dist. No. 29680, 2021-Ohio-51; *Hall v. GMS Mgt. Co., Inc.*, 9th Dist. No. 29920, 2021-Ohio-2392; *Fabec v. Frederick & Berler, L.L.C.*, 8th Dist. No. 110562, 2022-Ohio-376; *Omega Riggers & Erectors, Inc. v. Koverman*, 2d Dist. No. 26590, 2016-Ohio-2961.

{¶ 40} Rather, these cases have extended the application of *Scholler* to various types of third-party tort claims. As noted by the court in *Kim*:

"A claim against an attorney for actions taken in his professional capacity is a claim sounding in legal malpractice no matter how artfully the pleadings attempt to raise some other claim." *Omega Riggers & Erectors, Inc. v. Koverman*, 2d Dist. Montgomery No. 26590, 2016-Ohio-2961, ¶ 22, 65 N.E.3d 210. Accordingly, Ohio courts have consistently applied the qualified immunity recognized in *Scholler* and *Simon* to third party claims of tortious conduct directly related to an attorney's representation of a client even when the cause of action asserted is not "legal malpractice." *See Hahn* at ¶ 55-69 (applying rule to invasion of privacy claim against third party attorney); *Omega Riggers* at ¶ 22-44 (analyzing claims for negligence and violation of a fiduciary duty in the context of legal malpractice); *Moffit v. Litteral*, 2d Dist. Montgomery No. 19154, 2002-Ohio-4973, ¶ 75-82 (applying rule to claim for conversion against third party attorney); *Lisboa v. Lisboa,* 8th Dist. Cuyahoga No. 95673, 2011-Ohio-351, ¶ 24-28 (analyzing claims for third party malpractice, fraud, conspiracy, civil aiding and abetting, and intentional infliction of emotional distress together); *FV-I, Inc.*, *In Trust for Morgan Stanley Mtge. Capital Holdings, L.L.C. v. Townsend-Young*, 8th Dist. Cuyahoga No. 109191, 2020-Ohio-5184, ¶ 64-66 (applying rule to claim of fraud against a third-party attorney). *See also Andrews v. Carmody,* 145 Ohio App.3d 27, 34, 761 N.E.2d 1076 (11th Dist.2001) (tortious interference with a contract).

*Id*. at ¶ 14.

{¶ 41} Thus, it is clear that the nature of the third-party's tort claim is immaterial to the application of the *Scholler*/*Simon* attorney-immunity rule. Here, appellant's allegations against appellees for defamation and tortious interference with economic relations arise out of appellees' representation of 5 Starr and Bailey. Appellant presents a quintessential third-party tort claim, and the trial court correctly applied the *Scholler*/*Simon* attorney-immunity rule applicable to third-party tort claims. Thus, appellant's arguments regarding the trial court's alleged errors in failing to apply the standards applicable to defamation claims are unavailing.

{¶ 42} Applying the *Scholler*/*Simon* attorney-immunity rule applicable to third-party claims, the trial court concluded appellant had failed to set forth genuine issues of

material fact as to whether Koenig, in preparing and delivering the December 6 and 7, 2017 letters, acted without malice and in good faith with his clients' knowledge.[9]

{¶ 43} The trial court based its finding that there is no genuine issue of material fact as to whether Koenig acted in good faith on Koenig's affidavit testimony that prior to preparing and sending the letters, he engaged in a due diligence review of Bailey's allegations against appellant, which included review of the Agreement, interviews with 5 Starr employees, and review of the police report Bailey filed after appellant resigned. The court found that Koenig's actions in this regard demonstrate that the statements made by Koenig in the letters were not uninformed; rather, they were founded on his investigation of the facts and circumstances surrounding the dispute. Noting appellant's argument that Koenig acted in bad faith because an experienced attorney could not have concluded that the Handbook subjected appellant to any contractual obligations, the court pointed out that the letters relied on language included in both the Handbook and the Agreement. The court further averred that the primary question was whether Koenig acted in good faith in advocating for his clients, not which party would prevail on their respective interpretations of the Handbook and Agreement. The court specifically stated, "[t]he Employee Handbook and Confidentiality and Non-Compete Agreement may be inartful and imprecise when read together, but that issue is not before this Court. The question here is whether a lawyer acts in bad faith and maliciously when advocating for his client's preferred outcome in the face of such ambiguity." (June 24, 2022 Decision & Entry at 9.) The court found that appellant had failed to present evidence rebutting Koenig's evidence establishing that he acted in good faith.

{¶ 44} Appellant challenges this finding,[10] arguing the trial court ignored the evidence she presented establishing that Koenig "lacked good faith in investigating the truthfulness of his statements before he sent the letters." (Appellant's Brief at 30.) Specifically, citing Edgington's deposition testimony, appellant argues that "if Mr. Koenig

---

[9] The trial court found "there is no claim of privity between [appellant] and [appellee]." (June 24, 2022 Decision & Entry at 6.) "Privity," in the context of *Scholler* and *Simon*, refers to privity between the third-party (appellant) and the attorney's client (5 Starr and Bailey). It appears the trial court may have misconstrued the term "privity" to refer to privity between appellant and appellees. However, appellant did not assert in her memorandum contra that she was in privity with 5 Starr and Bailey, and she does not challenge the trial court's finding regarding privity on appeal.

[10] We note that appellant does not challenge the trial court's finding that Koenig sent the letters with his clients' knowledge.

had interviewed 5 Starr employees[,] * * * then Mr. Koenig would have known that 5 Starr's decline in clients was self-induced, as 5 Starr called clients themselves to cancel appointments because 5 Starr did not hire another esthetician to provide eye-lash extensions after [appellant's] employment." (Appellant's Brief at 30-31.) Appellant also cites the deposition testimony of Beck and Edgington in arguing that "5 Starr employees testified that [appellant] was never known to take anything of 5 Starr's property during her employment." (Appellant's Brief at 31.)

{¶ 45} The minimal testimony cited by appellant does not establish a genuine issue of material fact as to whether Koenig acted in good faith in performing services on behalf of his clients, 5 Starr and Bailey. We first note that Koenig testified that he interviewed Edgington as part of his investigation. Moreover, his interviews of 5 Starr employees comprised only a portion of his investigation into Bailey's assertions about appellant. Indeed, as we have previously discussed, Koenig's investigation included discussions with Bailey, as well as reviews of the Handbook, the Agreement, and the police report.

{¶ 46} The court further found there was no genuine issue of material fact as to whether Koenig's performance in his representation of his clients was conducted with malice. In so finding, the trial court cited the definition of malice set forth in *Preston v. Murty,* 32 Ohio St.3d 334 (1987). There, the Supreme Court explained that malice means "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at 336. The trial court noted Koenig's affidavit testimony that he did not know appellant prior to his engagement by Bailey and 5 Starr, had spoken to her only during legal proceedings in the instant case, harbored no feelings of hatred, ill will, or spirit of revenge against appellant, and wrote the letters only to advance his clients' rights and interests. The court concluded that "aside from mere speculation, [appellant] presented no evidence of malice on the part of Mr. Koenig." (June 24, 2022 Decision & Entry at 11.)

{¶ 47} Appellant first contends the trial court erred in applying the *Preston* definition of malice rather than the definition of "actual malice" set forth in *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991). *Jacobs*, a defamation case not involving attorney immunity, held that actual malice is demonstrated when the publisher of a statement is

"acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* at 116. Appellant contends this definition should be applied to her case because she claimed she is a victim of defamatory statements made by appellees in the December 6 and 7, 2017 letters. Appellant's contention is based on the assumption that she has established her defamation claim. However, as previously discussed, appellant's defamation claim was never properly before the trial court. As such, the trial court properly applied the *Preston* definition of malice rather than the definition of actual malice set forth in *Jacobs*.

{¶ 48} In the context of third-party liability cases, Ohio courts have defined malice in a number of ways. In *Simon,* the Supreme Court suggested that an attorney acts maliciously when special circumstances such as "fraud, bad faith, [or] collusion" are present. *Id.* at 76. This court has defined malice to include actions taken by the attorney with an ulterior motive separate and apart from the good-faith representation of the client's interests. *Ryan v. Wright,* 10th Dist. No. 06AP-962, 2007-Ohio-942, ¶ 19, citing *Hahn* at ¶ 67, citing *Thompson v. R & R Serv. Sys., Inc.,* 10th Dist. No. 96APE10-1277 (June 19, 1997). In *Ryan,* we further noted that "[m]alice has also been defined in this context to imply ' "[a] condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another without justification or excuse." ' " *Ryan* at ¶ 19, quoting *Moffit v. Litteral*, 2d Dist. No. 19154, 2002-Ohio-4973, ¶ 82, quoting *Black's Law Dictionary* 956 (6th Ed.1990). In *Omega Riggers* at ¶ 35, the court averred:

> "[M]alice, as a substitute for an attorney-client relationship, cannot be predicated on actions by the attorney that the attorney is permitted to take, or even negligently may take, as part of the representation of plaintiffs' adversarial client. To constitute malice, the actions of the attorney must include a disregard of rights that the attorney, not the client, is required to protect and must include harm beyond that which legal action necessarily may inflict. In most circumstances, an attorney is not obligated to protect the rights of an adversary. * * * Therefore, in our view, to constitute malice as a conscious disregard for the rights of others causing substantial harm that will suffice to substitute for an attorney-client relationship, facts must exist that demonstrate extra-legal activity."

{¶ 49} Appellant argues that a genuine issue of material fact exists as to whether Koenig acted with malice in preparing and sending the letters. Appellant argues that Koenig intentionally misrepresented the contents of the Handbook and Agreement in the letters. Specifically, appellant argues that "Koenig admitted to reading the [H]andbook and had actual knowledge of its contents but purposely altered the language to say something it did not say" and that "Koenig changed the language and meaning of the terms of the [H]andbook in his publication to Artistic Angle to falsely convey that [appellant] was prohibited from renting space to pursue her business opportunities." (Appellant's Brief at 28, 32.) For these assertions, appellant cites paragraph three of Koenig's affidavit. That paragraph simply sets forth the circumstances surrounding Koenig's representation of 5 Starr and Bailey. It does not discuss, or even mention, either the Handbook or Agreement.

{¶ 50} Appellant offers no other evidence to support her claim that Koenig falsely and intentionally misrepresented the contents of the Handbook and Agreement in the letters. At best, Koenig may have misconstrued those documents; however, incorrectly interpreting the documents does not evidence malice as defined in the case law cited above.

{¶ 51} Appellant also points to the expert reports she attached to her response to appellees' motion for summary judgment wherein the experts opined that Koenig's actions demonstrated bad-faith conduct for which third-party liability may apply and that because no reasonable attorney would believe that the Handbook prohibited post-employment competitive activity, no reasonable attorney would have sent the letters.

{¶ 52} Civ.R. 56(C) limits the types of materials that may be considered in summary judgment proceedings to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." The rule expressly states that "[n]o evidence or stipulation may be considered except as stated in this rule." In *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, this court held that pursuant to Civ.R. 56(C), " ' "documents submitted in opposition to a motion for summary judgment must be sworn, certified or authenticated by affidavit to be considered by the trial court in determining whether a genuine issue of material fact exists for trial." ' " *Id.* at ¶ 23, quoting *Rilley v. Brimfield Twp.*, 11th Dist. No. 2009-P-0036, 2010-Ohio-5181, ¶ 66, quoting *Sintic v. Cvelbar*, 11th Dist. No. 95-L-133 (July 5, 1996). We further stated that "[t]he proper procedure for introducing evidentiary matter of a type not

listed in Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit." *Id.*, citing *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 89 (10th Dist.1990), citing *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220 (8th Dist.1986). The expert reports were not authenticated by affidavit. Accordingly, those reports may not be considered under Civ.R. 56(C).[11]

{¶ 53} In short, appellant does not point to any evidence of fraud, bad faith, collusion, willful wrongful acts, extralegal activity or other malicious behavior or actions on Koenig's part that would allow a reasonable inference that the preparation and dissemination of the December 6 and 7, 2017 letters was done with an ulterior motive separate and apart from the good-faith representation of 5 Starr and Bailey.

{¶ 54} "Although issues regarding malice are generally questions left to the jury, summary judgment is appropriate under certain circumstances, such as when a plaintiff fails to present sufficient facts to rebut a presumption of immunity." *Kim* at ¶ 16, citing *Leonhardt v. Akron*, 9th Dist. No. 29049, 2019-Ohio-5223, ¶ 15, citing *Shadoan v. Summit Cty. Children Servs. Bd.*, 9th Dist. No. 21486, 2003-Ohio-5775, ¶ 14-15.

{¶ 55} In this case, appellees presented sufficient evidence establishing Koenig acted without malice and in good faith with his clients' knowledge when preparing and disseminating the December 6 and 7, 2017 letters to appellant and Artistic Angle, respectively. Appellant failed to carry her reciprocal burden under Civ.R. 56(C) to present evidence sufficient to create a genuine issue of material fact as to those issues. We thus overrule appellant's second and third assignments of error.

{¶ 56} In her fourth assignment of error, appellant contends the trial court erred in failing to consider her claim that Koenig's law firm, Koenig & Owen, is vicariously liable for Koenig's liability under the theory of respondeat superior.

{¶ 57} Appellant's assertion that the trial court did not consider appellant's respondeat superior claim is not accurate. The trial court stated that "the evidence before the Court conclusively establishes that [appellees] are entitled to judgment as a matter of law on [appellant's] *claims*." (Emphasis added.) (June 24, 2022 Decision & Entry at 11.) The court further stated that "[appellant's] *claims* against [appellees] Charles A. Koenig

---

[11] We note that the trial court did not consider the experts' reports in ruling on the motion for summary judgment.

and Koenig & Owen, LLC are hereby **DISMISSED WITH PREJUDICE.**" (Emphasis added; emphasis sic.) (June 24, 20222 Decision & Entry at 11.) The trial court's utilization of the plural term "claims" indicates that it considered all three of the claims raised in appellant's complaint, including the claim for respondeat superior.

{¶ 58} Further, appellant's reliance on *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, is misplaced. *Sawicki* concerned a patient's right to assert a malpractice claim against a medical corporation based on the conduct of a physician who had been employed by both the medical corporation and the state medical college hospital. *Id.* at ¶ 2-3. The trial court dismissed the claim against the physician on the ground that he was a state employee. The court stayed the patient's respondeat superior claim against the medical corporation pursuant to R.C. 2743.02(F) pending a determination by the Ohio Court of Claims as to whether the physician acted within the scope of his state employment at the time of the alleged malpractice and was thus entitled to personal immunity.

{¶ 59} The matter was before the Supreme Court through an appeal of the Sixth District Court of Appeals' issuance of a writ of procedendo to compel the trial judge to vacate the stay. *Id.* at ¶ 1. The Supreme Court rejected the medical corporation's argument that it could not be vicariously liable if the physician-employee were personally immune from liability based on his co-employment with the state. *Id.* at ¶ 28. The court concluded that the physician-employee's potential immunity as a state employee was "immaterial" to his private employer's vicarious liability, because "[a]n employee's immunity from liability is no shield to the employer's liability for acts under the doctrine of respondeat superior." *Id.* at ¶ 21, 28, citing *Adams v. Peoples*, 18 Ohio St.3d 140, 142-43 (1985).

{¶ 60} The instant case is distinguishable from *Sawicki*. The issue in *Sawicki* was whether the physician-employee acted within the scope of his state employment at the time of the alleged malpractice and was thus entitled to personal immunity under R.C. 2743.02(F). Here, the issue was whether Koenig, an attorney, was immune from liability under common law, i.e., *Scholler* and its progeny, for claims asserted against him by a third-party plaintiff. We decline to extend the holding in *Sawicki* to the facts of the instant case. Appellant's fourth assignment of error is overruled.

## IV. Conclusion

{¶ 61} Having overruled appellant's four assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellees.

*Judgment affirmed.*

MENTEL and JAMISON, JJ., concur.

———————————